In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00128-CV
_____

IN RE CYNTHIA GASKILL, ET AL

Original Proceeding

MEMORANDUM OPINION

Relators, voters dissatisfied with the results of an election approving the Magnolia ISD's authority to issue $228,000,000 in school bonds, filed a writ of mandamus almost six months after the election seeking to compel James Charles Adcox (in his official capacity as Magnolia Independent School District's Board President) to "take such actions as necessary to conduct" a recount for the 2022 Magnolia ISD Bond Order election on Referendum A.[1] The relators say they are not

_____

[1]*See* Tex. Elec. Code Ann. § 273.061.

1

seeking to contest the election's results, but that they instead want information about the machines used in the election so they will know in upcoming elections how accurate the machines are in counting votes, including an election that will occur in May 2023.

Our jurisdiction over elections, however, is limited to issuing writs of mandamus to compel the performance of an official's duties in holding an election.[2] We hold that by waiting until after the November 8 election became final, the relators deprived this Court of jurisdiction to consider their petition for mandamus relief. Because we lack jurisdiction over the petition, we order it dismissed.

## Background

On November 8, 2022, voters in the Magnolia Independent School District passed a proposal approving to sell $228,000,000 in bonds for among other things "the construction, acquisition, renovation, and equipment of school buildings in the District[.]" The measure passed, but by a margin within the ten percent threshold provided by the Election

---

[2]*Id.*

Code that allowed for twenty-five or more eligible voters, acting jointly, to petition for a recount.[3]

On November 21 Cynthia Gaskill presented Suzie Harvey, Montgomery County Elections Administrator, with a joint petition for recount.[4] Gaskill left the petition at the Montgomery County Elections Office, and a Montgomery County employee gave Gaskill a receipt for the $2,100 Gaskill paid as deposit for the recount.[5] That same day, Harvey (a Montgomery County Employee) emailed a copy of the petition to an

---

[3] *See id.* § 212.024(a)(1), (b)(2).

[4] Relators are Cynthia Gaskill, Gladys Sharon Craig, Elise Eaton, Jennifer Eckhart, Christopher Gaskill, Debra Gastineau, Paul Gastineau, Cheryl Gregory, Paul Gregory, Pamela Hester, Mary Jo Hudnall, Jack Muth, Melinda Jelks Olinde, Robert Howard Olinde, Robert McDonald Olinde, Cynthia Phillips, Calvin Russell, Rajene Russell, Susan Scruggs, Peter Smith, Barry Tate, Janice Vancleave, Wade Vancleave, Jerome Vanderhorst, Julie Vanderhorst, and Kimberly Weber, as individual voters and residents within the Magnolia Independent School District. *See id.* § 212.024(b) ("The following persons may obtain an initial recount in an election on a measure:. . . (b)(2) any 25 or more persons, acting jointly, who were eligible to vote in the election.").

[5] *See id.* § 212.111 ("(a) A deposit to cover the costs of a recount must accompany the submission of a recount document. (b) The deposit must be in the form of cash or a cashier's check or money order made payable to the recount coordinator."). *See also id.* § 212.012 ("The amount of the recount deposit is: . . . (2) $100 for each election day polling location or precinct, whichever results in a smaller amount, in which an electronic voting system was used."). Gaskill's recount petition reflects that her deposit was based on "21 precincts @ $100 each."

employee of the school district and asked that the school district's employee forward the petition to Adcox. In a telephone call to Gaskill—which also occurred on November 21—Harvey explained "that the petition would need to get forwarded to Magnolia ISD School Board President, Chuck Adcox."[6] Gaskill also emailed a redacted copy of the petition to Adcox that day.

On December 2, Adcox notified Gaskill by email that the recount petition she submitted to Harvey had been rejected because "it was not properly or timely filed with the presiding officer of the canvassing authority." In the same email, he notified her that he was the presiding officer of the Board of Trustees, that the "Texas Election Code requires that a recount petition be filed with the presiding officer of the canvassing authority[,]" and that Magnolia ISD had "no legal authority to grant a recount on the basis of a defective application submission or waive such

---

[6]Under the Election Code, as the president of the Trustees of the Magnolia Independent School District, Adcox was also the presiding officer of the canvassing authority for the school board's November 2022 election. *See id*. § 212.026(b) ("In an election for which there is only one canvassing authority and which is canvassed jointly with another election, a recount petition must be submitted to the presiding officer of the authority designated by law as the canvassing authority for the election rather than the presiding officer of the canvassing authority designated by the joint election agreement.").

4

defects." Next, Adcox notified Harvey that he had rejected the recount petition because the petition wasn't served on him as the president of the school board. He asked that Harvey work with Gaskill to return the money that Gaskill deposited for the recount.

On December 5, Gaskill then tried to serve Adcox with the recount petition where he maintained an office in a school building of the Magnolia ISD. According to Relators' petition, Gaskill went to a Magnolia ISD building to serve the petition on Adcox. But after entering the building, a school district employee told Gaskill Adcox was out of town. The employee wouldn't accept the recount petition or the cashier's check Gaskill had with her, a check for $2,100 which was drawn on Gaskill's personal account. Because Adcox was not in his office when Gaskill attempted to serve him there, she then sent him a copy of the petition by email.

## Analysis

Relators argue Adcox acted in bad faith and in violation of the Election Code by rejecting the recount petition they filed with Harvey on

November 21.[7] They complain that Adcox failed to advise them of his decision rejecting their petition within 48 hours "after receipt," the period in which they claim Adcox was required to inform them of his decision rejecting their petition under the Election Code.[8] Relators add that if Adcox had the legal authority to reject their petition on November 22, they timely cured any defect in that petition on December 5, either when Gaskill attempted to deliver the petition and cashier's check for $2,100 to Adcox at the office where he usually conducts official business or when she emailed the petition to him that day.[9] Under the Election Code, if a

---

[7]*See id*. § 212.028(a) ("[A] petition for an initial recount must be submitted by 5 p.m. of the second day after the date the canvassing authority to whose presiding officer the petition must be submitted completes its canvass of the original election returns."). *See also id*. § 1.007(c) ("A delivery, submission, or filing of a document or paper under this code may be made by personal delivery, mail, telephonic facsimile machine, e-mail, or any other method of transmission."); *id*. § 1.006(a) ("If the last day for performance of an act is a Saturday, Sunday, or legal state or national holiday, the act is timely if performed on the next regular business day, except as otherwise provided by this code.").

[8]*See id*. § 212.029 (The recount coordinator must review the petition for complaints within 48 hours "after receipt[,]" but if it doesn't comply, "the recount coordinator shall *promptly* notify the petitioner of each defect in the petition and shall enter on the petition a description of each defect and the date of the notice. A deposit in an improper form or amount is a defect for purposes of this subsection.") (emphasis added).

[9]*See id*. § 212.030(b) ("An amendment must be submitted to the recount coordinator not later than the deadline for submitting the

recount petition complies with the "applicable requirements, the recount coordinator shall approve the petition and note on the petition its approved status and the date of the approval."[10] And upon the approval of the "recount coordinator," the "recount supervisor shall . . . order the recount to be held."[11]

The problem for Relators, however, is that within thirty days of the date the election records became publicly available, they didn't file a petition for mandamus to compel Adcox to either allow them to amend the recount petition that Gaskill served on the wrong public official on November 21 or to compel Adcox (as the recount coordinator and supervisor) to approve the petition and order a recount of the votes that

---

petition or 5 p.m. of the second day after the date notice of the defect under Section 212.029 is received by the petitioner, whichever is later.").

[10]*See id.* § 212.031(a). "Recount coordinator" is defined by Election Code section 211.002(6) as "the authority to whom a petition for initial recount or an expedited recount is submitted under Section 212.026 or 212.082." "Recount supervisor" is defined by Election Code section 211.002(7) as "the authority designated by Section 213.001 to manage and supervise a recount in election precincts in the jurisdiction of a local canvasing authority." For the November 2022 election, Adcox would have been both the "recount coordinator" and the "recount supervisor." *Id.* §§ 212.026(a), 213.001(a).

[11]*Id.*

were cast in the school board election that occurred on November 8.[12] To be sure, the Relators argue that Adcox didn't file their petition despite what they claim was his non-discretionary duty under the Election Code to do so. And given that duty, the relators conclude that this Court must treat the November 21 or December 5 petitions they filed for a recount of the vote as if they had been filed within the prescribed thirty-day period the Election Code allows for filing a recount petition.[13]

Yet as mentioned, Adcox rejected the November 21 petition that Gaskill submitted to Harvey because Gaskill didn't submit it to him but instead, she submitted it to Harvey.[14] The email that Adcox sent Gaskill that includes his letter to her dated December 2, 2022, states: "That

---

[12]*See id.* § 212.031(b) (Action on Petition); *id.* § 233.006(b) (Filing Period for Petition).

[13]*Id.*

[14]*See id.* § 212.031(b)–(d) ("(b) If the petition does not comply with the applicable requirements, the recount coordinator shall determine whether it is correctable by amendment. If the petition is not correctable, the coordinator shall reject the petition. If the petition is correctable, the coordinator shall delay acting on the petition until the deadline for amending it. If at that time the petition is not corrected, the coordinator shall reject the petition.

(c) On rejecting a petition, the recount coordinator shall note on the petition its rejected status and the reason for and date of the rejection.

(d) After approving or rejecting a petition, the recount coordinator shall promptly notify the petitioner of the action taken.").

petition [referring to the November 21 petition] is hereby rejected as it was not properly or timely filed with the presiding officer of the canvassing authority." The word "Rejected" is printed in blue ink on the November 21 petition, and Adcox signed and dated the petition as rejected on December 2. Under the Election Code and when rejecting a petition that a recount coordinator determines is not correctable, "the recount coordinator shall note on the petition its rejected status and the reason for and the date of the rejection."[15]

Even though in his December 2 email Adcox advised Gaskill he had rejected the recount petition, on December 5 Gaskill attempted to submit a recount petition to a school district employee who worked in the building where Adcox officed. But when the employee wouldn't take the petition, Gaskill emailed it to Adcox, complaining in her email that he didn't "allow [her] to correct any defects in the petition" of November 21 or "to allow us the opportunity to amend the petition in accordance with the Election Code."

To be sure, by filing a writ of mandamus, Relators likely could have challenged Adcox's final decision rejecting the November 21 recount

---

[15]*Id.* § 212.026(c).

petition and have argued that Adcox should have let them know why their petition was defective and how to correct it instead of rejecting their petition.[16] Under the Election Code, an official authorized by law to order a recount only has a thirty-day period following the election results being made publicly available to order a recount before the official canvass becomes final.[17] By waiting until April 28, 2023 to challenge Adcox's decision on their petition for recount by filing a petition for mandamus—that is, a delay of 171 days after the election results of the Magnolia ISD school bond election became publicly available—the relators allowed the canvass of the votes cast in the Magnolia ISD school bond election to become final.[18]

Candidly, the relators admit they are not seeking a writ under Title 14 of the Election Code, which are the sections of the Code that apply to an election contest.[19] So as to this original proceeding, the relators are not seeking to overturn the results of the official canvass in the Magnolia ISD's school bond election, in which the majority of voters approved the

---

[16]*Id.* §§ 212.029 (Initial Review of Petition); 212.030 (Amendment of Petition).
[17]*See id.* § 233.006(b).
[18]*See id.* § 212.031(a).
[19]*Id.*§§ 221.001-247.005.

district's issuing $228,000,000 in school bonds. Instead, Relators argue that because a recount would provide them with "an accounting on the use and veracity of newly purchased voting equipment . . . in Montgomery County," their petition for mandamus is justiciable under the provisions of Title 13, the chapter of the Election Code that applies to recounting votes in an election.[20]

We disagree with Relators, however, that a justiciable issue still exists in this case. By waiting 171 days to challenge Adcox's final decision rejecting their petition for recount, Relators allowed the results of the November 8 election to become final. Even though Relators argue the same voting equipment used in the school board election was used in the May 6, 2023, election to elect two trustees to Magnolia ISD's School Board, they have not shown how that would affect the results of the school board election on November 8 of last year.

Moreover, the procedures available to Relators in the May 2023 election and in future elections allow for recounts, and the statutory procedure contemplates that a recount committee in those elections (not relators) will—in case of a recount—have the statutory rights to access

---

[20]*Id.* §§ 211.001-216.005.

the information about the machines used in the election.[21] Thus, if the May 2023 election for trustees on Magnolia ISD's School Board fell within the margin required for a recount, and if the president of Magnolia ISD's School Board abused his or her discretion in refusing to initiate a recount after being presented with a proper recount petition by twenty-five or more voters acting jointly requesting a recount under the Election Code, twenty-five or more voters in that election may file a petition for mandamus in this Court challenging the decision rejecting their petition should that occur before the recount supervisor's authority to order a recount expires.[22]

---

[21]*Id.* § 213.007 (a) On presentation by a recount committee chair of a written order signed by the recount supervisor, the custodian of voted ballots, voting machines or test materials or programs used in counting electronic voting system ballots shall make the ballots, machines, or materials or programs, including the records from which the operation of the voting system may be audited, available to the committee.

(b) The custodian of keys to secured materials or equipment shall make the keys available to the committee in the same manner as provided by Subsection (a).

(c) The recount committee chair shall have the materials and equipment restored to their secured condition and returned to the appropriate custodian.

[22]*See In re Hotze*, 643 S.W.3d 413 (Tex. 2022) (Blacklock, J., concurring) (Complaints concerning a past election "in the books" do not present grounds for a court to exercise its mandamus jurisdiction.); Tex. Elec. Code Ann. § 273.061(a) (providing the courts of appeals and Texas Supreme Court with jurisdiction in election cases to "compel the

Conclusion

By waiting 171 days after the election to challenge Adcox's decision rejecting the petitions Relators submitted for a recount of the vote on a school bond measure approved by voters, the relators allowed the results of the election to become final and Adcox's duty to order a recount of the results to expire. We hold that we lack jurisdiction over this original proceeding. Accordingly, the Relator's petition for writ of mandamus is dismissed.

PETITION DISMISSED.

PER CURIAM

Submitted on June 7, 2023
Opinion Delivered June 8, 2023

Before Golemon, C.J., Horton and Wright, JJ.

---

performance of any duty imposed by law"). We note that Relators filed an amended petition in this Court on May 10, which was after the May 2023 election they rely on to assert they have a justiciable basis for their claim. However, they failed in their amended petition to advise the Court whether the margin of error in the May 2023 election triggered a recount.